Please call the next case. 91698 American National Bank v. Potash Corporation Counsel, will you please approach the podium? Tell us who you are, who you represent, and about how much time you need. Philip Nathanson, representing the plaintiff's appellants. And I would like between, if possible, 15 to 20 minutes. 15 to 20 minutes. Ken Rectoris, on behalf of the defendant's appellees. Same time as final. I presume we have read the briefs. We're familiar with the facts. Argue the facts only as they relate to an issue you're trying to make. And if we have any questions, we will not hesitate to ask them. Stick to your strong case. Thank you. May it please the Court. This is a landlord-tenant case. There's a lot of briefing on a lot of issues, but I would like to begin with the proposition that my clients were the landlord in a commercial office building in Skokie. They filed this action to recover an excess of $2.5 million of rent from the Potash Corporation, pursuant to Potash's 10-year lease, which my clients contend was breached when they left after approximately five years of the 10-year lease. I intend to discuss this morning, initially, the breach of contract or breach of lease claim. Can you try standing first? Since American National Bank sold, as I see it, their interest in this property to LaSalle National Bank in March 31st of 2000, and then filed suit in this case in 2001, and that's what the trial court ruled on, that and the other issue of standing, the trial court reaching the issue of absolute assignment of rents. Am I mistaken that American National Bank did not sell its interest in this property on March 31st of 2000? Justice Quinn, there was press release evidence offered pursuant to the motion for summary judgment that American National Bank transferred the management of its trust department to LaSalle National Bank. There was no evidence offered that it sold the title to LaSalle National Bank. In fact, we offered the track search in opposition to summary judgment. And they point out though in their brief in a footnote that the track search wouldn't stand anything because American National Bank notified all of its previous clients, by the way, we're not going to put this on your titles because it would cost you money to do so, right? Well, that's kind of straightforward. Did they sell their interest? Did your client sell its interest in this property? Maybe start with that. Is that not correct? Well, my client was a partnership that owned the beneficial interest in the land trust. The issue raised by the defense was, to respond to your question, if the land trustee, American National Bank, transfers its business to LaSalle National Bank, does that destroy standing when the beneficial holder of the claim and of the property is still the same partnership that it was before? Nothing changed. The land trustee is a nominal party at best. It wasn't collecting rent. It wasn't getting rent. Is that covered in your brief? Absolutely. I mean, the idea of it not collecting rent? That being the trustee, the fact that the – go ahead. Go ahead. What we argued, Your Honor, was the following. That the lease that was sought to be enforced here was between American National Bank and Harms Road Partnership and Potash. That's the contract sought to be enforced. That contract was never assigned by American National Bank to LaSalle National Bank. Indeed, when GMAC filed suit in its foreclosure case before Judge Hall, GMAC also sued American National Bank as the land trustee initially, and it wasn't amended until a year or more down the road to be LaSalle National Bank. And they changed it to LaSalle National Bank based on the transfer in March of 2000. Isn't that – is that not correct or no? Your Honor, we disagree with what you're saying for the following reason. Go ahead. Something was transferred. Whether it was a management agreement, a service agreement, there was no evidence that title of any sort was transferred initially from American National Bank to LaSalle National Bank. When you say initially, the case has been pending for nine years, okay? Initially. When did they transfer title then? They transferred title after the foreclosure case was filed because that's when the Katten-Muchin firm on behalf of GMAC amended their pleadings to go from American National Bank to LaSalle National Bank. This moving defendant in a summary judgment motion never established any of this. They didn't show any agreement between LaSalle and American National Bank. They strictly offered two press releases saying that LaSalle was now managing and servicing the trust department of American National. But that can't – even if the court is right, even if Your Honor is right, that they sold the trust department from American National Bank to LaSalle National Bank, we contend that still wouldn't be dispositive understanding issue because the real party in interest was the Harms Road Partnership, which several months after the filing of this action was joined as a party plaintiff. There's no question it could have been joined initially as the sole beneficial interest holder. If you had standing initially to file the complaint, I suppose that would be correct. So the argument about American National Bank, which was, after all, a lessor of these premises that we're talking about, is an argument but not a dispositive argument from the plaintiff's point of view. We still had standing as the partnership to pursue the rent claim that the partnership admittedly owned. Nowhere did the defendant contend that the rents were being paid to a land trust. The rents were being paid to the partnership. Well, let's look at page 20 of your brief. I mean, you start there. And to your great credit, you were very forthright about this in your brief, really, saying how many times the pottish brought up the idea of how did American National Bank have standing. They bring it up once at page – twice at page 20, four times at page 21. And these are all over the period of months. So the first time they bring it up is June 13th of 2002, June 24th of 2002, August 12th, 2002, February 2003, May 2003, March 2004, May 2004, June 2004, and then April 2006. They're constantly saying you don't have – what about your standing? Can you explain your standing? And here we are. So, again, they first did that eight years ago, ten days ago. So eight years and two days, ten days ago. And we're still – I'm still trying to see. What was your interest in this property then on March – when you filed suit, when American National Bank filed suit? What interest did they have in this property? The interest in the property was they would remain the owner of the property. No foreclosure case had been filed on April 1st, 2001. I'm sorry, on March 1st. This case was filed on March 1st, 2001. On April 21st, a month and a half later, GMAC files the foreclosure case. So when this action is filed – and the defense argued that standing is measured when the action is filed. When this action is filed on March 1st, there is no default under the note, under the language of the note. The cure period hadn't even expired. And there is no foreclosure case. So the plaintiffs have standing to sue on March 1st. Well, that's, again, as to the absolute assignment of rent issue. Yes, the foreclosure issue, that would be true. I don't know that you cited a single case with a proposition that on March 31st of 2000, you transferred something and you still remained – it was still your property even though you transferred – What did you transfer on March 31st of 2000? My clients transferred nothing, Your Honor. American National Bank? Well, I represent American National Bank as a land trustee, but my clients, the beneficial interest holder in the land trust, transferred nothing. They were the partnership that owned the beneficial interest on this building before American National made a transfer to LaSalle, and they were the partnership that owned the same beneficial interest after something was transferred. And they are in no way affected by the transfers between the – Not in the least. Really? Do you cite a case for that anywhere that you can do that? That's true? Well – I mean, I read it's 170-some pages because the different panels said you could file 75 pages. And I don't see any – I could be wrong, but I don't cite – I don't see any cases in there standing for the proposition that when Americans sold whatever it was you say they sold, that the beneficiaries of that trust, who want this trust, who for whatever reason it's Illinois, the land of trust, a land trust. There's nothing wrong with land trusts apparently. The legislature has said so. But they are in no way impacted by that, so that the old trustee, American National Bank can file suit at any time, no matter what they did with the property, no matter what they did on March 31st of 2000, they remained as the agent or whatever you want to be, the trust person that can file actions on behalf of the beneficiaries. Your Honor, we cite the Azar case, A-Z-A-R, in our brief, where this court ruled that the beneficial owner of a land trust had standing to sue for matters arising out of the management, control, and operation of the property in question. It's undisputed on this record that the HARMS-OR partnership is managing, operating, controlling, collecting rents, doing everything that a partnership that runs and owns a building, or at least runs and owns the beneficial interest in the building, would do. So there's no question that from a legal point of view, the Azar case stands for the proposition that the partnership, HARMS-ROAD, still had standing to pursue this action on its own, whether American National Bank transferred its trust department to LaSalle or not. And was... Well, looking at Azar, and quoting from Azar, in a land trust, the legal and equitable title lies with the trustee, and the beneficiary retains what is referred to as a personal property interest. Skip a sentence. The only attribute of ownership ascribed to the trustee is that relating to title, upon which third parties may rely in transactions where title to the real estate is of primary importance. I suggest, like in a landlord-tenant dispute, as you characterize this case. So did American National Bank have title to this property when they filed suit in March of 2001? We offered an opposition to summary judgment at track search that said there was no transfer of title to LaSalle at that point. And they explain in a footnote that that was pursuant to the agreement from American National Bank with their trustees that we were going to save you some money and not file this. That was never offered in the summary judgment proceedings. It's been nine years. This case has been pending for nine years. If you think that we should send it back for more discovery in this area to see if your client, American National Bank, owned title, held title in this case when they filed, perhaps we should do so. Or maybe we should just get the case. Go ahead. I'll stop. Go ahead. Your Honor, in the Azar case from which the court read, this court said we find in the trial court hearing concluding the plaintiff as beneficiary of a land trust, lax standing to file the present lawsuit. This court has held that the beneficiary of the land trust is a proper party to litigation involving his rights and liabilities with respect to management and control, use, or possession of the property pursuant to the trust agreement. We argued below. We argue here that the agreement between American National and the Harms Road Partnership gave Harms Road all of the rights that this court referred to in the Azar case, to manage, control, operate, collect rents. So did this mortgage. So the fact that American National transferred something, several months after this suit was filed, my predecessor counsel filed a motion to amend the complaint to add Harms Road as a party plaintiff, which was allowed by the circuit court. I may say it was allowed in 2001 before the first reference that you pointed out in this brief in 2002 was made in this case to stand. And it was filed several months when Harms Road filed their appearance, based on your theory of relation back. They did that. They did that several months after defaulting on the mortgage. Is that correct? They filed suit after there was a nonpayment in March of 2001. That is correct. So they filed that eight months after, right? Okay. Thank you. But here's the point, Your Honor. As this court said in the CSM case, which was cited by the defendants, the standing continues even though there is a foreclosure  Justice Wolfson in the CSM case ruled that in that case, where the mortgage foreclosure action was filed first, if the court is saying that it's dispositive that there was already a default by August of 2001 when Harms Road was joined as a party plaintiff, in the CSM case, the mortgage foreclosure case was filed first after a default. There was a default, a foreclosure filing, and then two months later, CSM comes in and sues its lessee for damage to the real estate. After there's a default, after there's a mortgage foreclosure filing. And this court said that CSM still had standing because there had been no judgment of foreclosure and no sheriff's deed issued at the point that CSM filed the action. To reach that, my questions don't relate at all to the absolute assignment of rents. At all. Because I think that's a huge radioactive question that you're asking us. If we find for you, we'll have to address that. We'll have to say whether or not Illinois will permit an absolute assignment of rents in this case. They raise, however, there's a way we don't have to address that radioactive question. We could point out, as I have several times, as they did as well in their blue brief, that the American National Bank did not hold title in this property when they filed the suit. And they're not a proper party. They don't have standing. Which is a lot simpler. It could be a summary report. We wouldn't need to blow up the world on assignment of rents, absolute assignment of rents. And so if you want to talk about the absolute assignment of rents, why we shouldn't do that, go right ahead. But I wouldn't spend a lot of time on it because the issue I'm asking about is what interest do you have when you file a suit? American National Bank. Let me speak to that and raise it an additional point. Sure. The complaint is filed in March of 2001. Defendant files an answer to the complaint. Defendant doesn't raise standing to the first complaint. As a matter of fact, as you read from our brief, defendant doesn't raise standing for a year hence down the road. When defendant raises standing, actually it's longer than that, but they raise. How does that help? If you have standing, how does it help? It would only matter, if it mattered at all, that they were late. It's if you don't have standing. So the reason why we don't have standing, but they forfeited their right to bring up, because while they asked what our interests were for eight times, they didn't really file it until a summary judgment, no low eight years down the road. That isn't exactly, respectfully, Your Honor, that isn't exactly what we're arguing. What we're arguing is as follows. You have to plead an affirmative defense, which standing is in this state, to a complaint or it's at the very least, whether they waive it for the whole case, it's waived as to that pleading. At the very least. So when they plead it as to the fourth amended complaint. And your case for that proposition, counsel, that they waived it, forfeited it? It's in your brief. It is indeed, Your Honor. And it relies on a case called Greer v. Illinois Housing Development Authority, the leading case in this area. We allege, whether you reach the issue of waiver for the whole case, the first pleading that you can allege, that they allege standing on is the fourth amended complaint, which by that time, Harms Road has already been joined as a party plaintiff with American National Bank. So when they raise standing initially as to that first, as to that pleading, the fourth amended complaint, that the only, they can't go, they're saying we can't relate back, they can't relate back to the initial complaint and say the initial complaint shows lack of standing because they didn't plead standing at that point. Well, two things. One, the cases you rely on, I'd suggest, for the idea that you can forfeit an affirmative defense for failure to file it in a timely manner, and I'd suggest that you're mistaken in that, is a case called Greer v. Illinois Housing Development. They are relying on Greer, which is at 122 Illinois 2nd, 462, 1988. However, if you go to Greer, then you look up Greer and you read it, and it says, the employees argue and we agree that the developer's failure to raise this issue in the trial court constitutes a waiver, which precludes us from considering it on appeal. As we have previously stated, lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court, meaning you can't raise standing in front of us. Standing is not a jurisdictional argument. Had they not raised it down below, you'd be perfectly right to say they forfeited it, because we changed the waiver to forfeiture because Bob Steinman wanted us to. But it's raised, and it certainly was raised in the trial court. And going back to your second point about the idea that when the trial court finds that you had no standing, and not based on the assignment of rights, but based on whatever occurred in March 31st of 2000, however you want to characterize it, how is it then when A and B has no standing, when they file the suit, that you can then say, well, we get around that, because they didn't file their affirmative defense for four years, so everything that occurred in the four years, you can't strike those. We have to appeal all of those. It's a standing issue. When you file the complaint, when your clients file it, whoever was to file this complaint in 2001, American National Bank had no standing. So why on earth would a court hold? Yes, but it's interesting. Even though it wasn't your property, you had no interest in the property at that time. We'll figure this out. We're glad to say we have these three really interesting issues on these three counts that were thrown out. You had no standing. You had no right to be in court. You had as much standing, theoretically, counsel, as I had in that building, your client, in 2001. Again, not your client, Harms Road, but American National Bank. Well, assuming for sake of discussion that American National had transferred its trust department to LaSalle, I think a predecessor trustee has a sufficient interest. I mean, it would be a routine substitution of parties. You could substitute the parties. There are cases we cite where this court has substituted parties on appeal when there is a predecessor in interest and a successor in interest. It's not as if they're a stranger to this transaction. They're the lessor under the lease. But with all due respect, Your Honor, the case that we cited more than the Greer case on waiving affirmative defenses, and whether or not the affirmative defense is waived for the whole case, and let's assume it's not waived for the whole case, we are arguing that it was waived as to the initial complaint and that when it's first interposed as to the fourth amended complaint, that standing is measured by the allegations of the fourth amended complaint, not the initial complaint. Well, that's how that works. If standing can change based on filing other complaints, an amended complaint, well, go ahead. That's not what the cases say, so I'm taking it back, but go ahead. The cases say that the rights of the parties are measured when suit is filed. And that's 2001. Okay. Harms Road had the right to file this action in March of 2001. There's no doubt about that. Under the Azar case, under the trust instrument in question, it had sufficient. Standing under the cases cited by the defense is whether someone has a real interest in the controversy. Harms Road had a real interest in the controversy. They were the beneficial owner of the building managing and collecting rents. So they were, and are, a proper party plaintiff to pursue this case, and they were joined in August of 2001. And under the CSM case, there was no judgment of foreclosure, no sheriff's deed, or anything divesting them, whether they were in default or not. The plaintiff in CSM was in default when it filed suit, and this Court said it had standing. And was the default language the same in CSM as it is here? I believe it was, Your Honor, because there's a cure period in all these notes and mortgages, and my memory of it was that it was. May I reserve the remainder of my time? Thank you. And if he brings up anything new, even though I can't hear something. Thank you. Thank you. Good morning, Your Honors. Ken Rectoris on behalf of the defendants' appellees. Let me stick with the standing issue. I tried to make it as straightforward as I could in our brief and stress the point that Justice Quinn has recognized that we don't need to get into whether it's an absolute assignment which vests upon default or an equitable lien that vests upon possession. And that's because there was no standing for either of these parties under the traditional analysis. It is undisputed that American National did not own this trust on March 1st of 2001. We did not just rely on a press release. And we've cited that the documents in our brief, I'd have them here if you'd want, but there's a February 23rd 2000 notice to the plaintiffs from the American National indicating that as of March 31st, 2000, all American National's land business is transferred to LaSalle. LaSalle gave the same notice on February 21st, 2000. You have the notice of successor land trustee filed in April of that year. So there is absolutely no doubt that American National had no rights and no standing on March 1st of 2001. I expressed a concern with where we were going to go if we had to reach the absolute assignment of rents. Let me express a concern I also have on the other side. If we agree with you that when American National Bank, apparently, this is just from the briefs, transferred their entire trust department to LaSalle National Bank, if we were to say that, and again, it's in there, and we're just going to hold, well, since they got rid of their whole trust department back in March of 2000, would we not be depriving American National Bank of all their causes of action filed since March 31st of 2000 in every court in Illinois? I have no idea whether they have or have not. It's a big outfit. I bet, David, you run their name on a name thing that comes up called American National Bank. There's a lot of business, a lot of court business. As of that date, Your Honor, effective March 31st of 2000, the land trust business was, in fact, transferred to LaSalle. I can't change that. That is the situation. And that's even though you were not prejudiced. Again, your client did ask on eight occasions, and to their great credit they pointed that out, about the standing issue. Were you prejudiced other than having to proceed? I've been here for nine years, and my client has paid some pretty healthy bills in a case that should have never been filed. And in that regard, the lender who had the rights, GMAC, never once came after Potash for any rent. The parties who really had these rights never once made a claim against them. And we've been stuck in this case fighting tortious interference, fraud, consequential damages, standing for nine years. And I'd suggest to the court respectfully that that is a fair amount of prejudice. When did you first raise standing? I first, I have a timeline because, and Justice Quinn has already raised this, I started asking in court file documents for evidence that they had standing in June 13th of 2002. And throughout on numerous occasions, including Mr. Goodman's deposition on May 14th, 2003, I was told by Mr. Nathanson that there was a written agreement. This is in the record. Written agreement, and it would be provided to the court, Judge Goldberg in camera. That never happened. We then got involved in briefing because they wanted to amend for the fourth time to add a fraud claim. When that finally, we objected to that. We lost. They filed that. We finally filed our answer with the standing affirmative defense on June 22nd, 2004, because I believed at that time I had, consistent with Rule 137, enough evidence, which, frankly, I had to go out and get by subpoenaing the foreclosure file and doing a lot of legwork on my own to state a standing defense. The case then went forward. And there was a lot of briefing on other issues that are before the court in 2006 and 2007. We finally came back to the breach of contract claim in 2008. Plaintiffs tried to take an appeal up in the relocatory on the fraud. So when the case finally came back in 2008, we filed the motion for summary judgment in standing. Thank you. And then that's American National. I guess on Harms Road, obviously they did not, they were not a named plaintiff on March 1st, 2001. And on April 30th of 2001, Judge Hall entered an order granting possession and the rights of the rents to the lender, GMAP. So if you stop there, as of April 30th, 2001, Harms Road has no rights. Under any analysis, absolute, equitable lien, possession is now, as of April 30th, 2001, in the hands of the lender. And Harms Road is not in the case. Four months later, on August 8th, 2001, the complaint is first amended to add Harms Road. The first district's already ruled in Beegley that you cannot amend to create standing. In any event, even if you could, it doesn't matter. Because on that date, August 8th, 2001, they had no rights. Those rights belonged to the lender. One interesting point, and it's kind of a, I don't know, perhaps it's just of intellectual interest, but even if you were to reject all that and say, you know what, we're going to let them, we're going to allow them to amend on August 8th, even though they had no possession, we're going to allow them to relate back, even though the law says you can't, they still, as of April 30th, had no direct rights. It's absolutely undisputed. So the complaint would have to read that they were assigned those rights from the lender, as of April 30th, and the lender sustained damages. That's all the case law says. So even if you were to buy all their arguments, you still have a case where they were attempting to proceed directly when they had no rights. They knew that. They knew that, and this is in our brief and in our record, because Mr. Goldberg made a statement to the court that they're going to have to amend their pleading. This was after we filed the standing summary judgment motions in August of 2008. And he said, uh-oh, we do have a problem. Even if we win on all our other arguments, we have no direct claims. The lender had all those claims on April 30th of 2001. They got leave to amend. They never did. So what I'm suggesting to the court is there's a number of ways that plaintiffs lose on standing. American National wasn't the land trustee on April 1st. Possession passed on April 30th. I'm sorry, on March 1st. Possession passed on April 30th. Harms Road had no rights. When it was added in the case on August 8th, there's no relation back. Even if you do relate back, they have no direct rights. So it's very simple in that regard. I guess I'd like to ask a question. There are two other issues in the case which you didn't get to, consequential damages and fraud. Would you like me to address those or stand on the standing? No, not me. Thank you. Thank you. Respectfully, there is nothing simple about what Mr. Erectoras just said at all. There is no case in Illinois that holds that a tenant can avoid paying rent by raising the rights of a third party, the mortgage lender, or by raising what they have raised in this case. Furthermore, the lender did not go after Potash because the lender didn't view, as its filings before Judge Hall stated, that it had the right to go after Potash. There was a receiver appointed, and the receiver is supposed to collect rents for both parties. Thereafter, my client went to the mortgage company, GMAC, to discuss the Potash claim. GMAC transferred the mortgage to the VEF Corporation, and my client entered into an agreement with the VEF Corporation and paid a substantial amount of money to confirm the fact that the Potash claim belonged not to the lender, but to the Harms Road Partnership. So there was no reason for the lender to pursue Potash because the claim remained at all times before the foreclosure judgment and deed was issued in the possession of my client. And I think it's very important to emphasize the fact that this is an Illinois land trust. An Illinois land trust is a vehicle that is very popular here, but as the Azar case says, the rights belong to the beneficial interest holder. And the rights were exercised here before there was a foreclosure and judgment, which this Court found to be dispositive in the CSM case. The rights were exercised in filing suit, in joining Harms Road as a party plaintiff, and in signing the VEF agreement that confirmed that the Potash claim remained at all times with the Harms Road Partnership. What is being asked of this Court by the Potash Corporation, which walked away and breached a lease for an excess of $2 million in rent, is for this Court to let them walk away because the lawyer who filed this case only joined American National Bank initially and didn't add the beneficial holder of the trust in the first pleading, which wasn't even attacked on standing grounds by the defense. Isn't that what we do? We do. That's what the appellate court does because we have to enforce the law. And so we don't want to say, and honestly, not just because you represent a bank and trustees and stuff, although you don't represent widows and orphans today, Potash is not a widows and orphans outfit either. That's what we do. We have to impose the law as it stands. And if it hurts people, it hurts people. You're the appellant here, Mr. Nathanson. This Court may find, as I've explained, I think the straightforward way is to say that American National Bank sold its interest in this property. That, I think, when it gets published, would devastate American National Bank. And what is the upside of that? The complaint in front of us involves, there's no question, but Potash paid their rent through the time while they were physically present. There's a large complaint about whether or not they had met with the lease requirements of they had to ask for more than 40 percent and they asked for 57,000 square feet instead. There's a battle to be joined over that, to be sure. But I don't know if what you're hoping to win in the end result will be anywhere near what could occur to you when this opinion comes out. And it's up to you. I mean, I don't control this case other than the three of us will get together in a few minutes, decide what's going to happen. It will be written and then published. Up until that time, you control the case because it's in front of us now. But I think about it. I'm an ex-prosecutor. I'm not a civil lawyer. I've been doing this 14 years. I read up on it. I don't know. It's a huge deal, a real big deal to your client. I mean, check in. Your Honor, may I make two points in response to what the Court just said? Sure. First, the defendant cites People v. 1,124,905 U.S. Currency, 177 Illinois 2nd 314 on the standing issue. In that case, the Supreme Court said that the primary focus of standing is whether a party has a real interest in the outcome. And they go on to say the doctrine of standing is designed to preclude persons having no interest in a controversy from bringing suit. But it should not be an obstacle to the litigation of a valid claim. Whatever the nature and extent of this rent claim is, and the Court has seen what the rent claim is in the briefs, we submit that Harms Road had a valid rent claim, at least prima facie. And this standing argument regarding a land trustee and the transfer of its business to another land trustee should not defeat that claim. That is an obstacle in the words of the Supreme Court. But then you go back, though, to what they just said about the trial court. On May 30, 2001, four months or three and a half months before Harms Road gets back involved in a case, they foreclosed. What interest did they have? Right? There was a foreclosure entered on May 30, 2001. Possession was granted. Absolutely not. There wasn't a foreclosure. Possession was granted, was it not? with the mortgage lender to confirm that the rents remained in him. There was no foreclosure judgment, which was dispositive in the CSM case, nor was there a deed, a sheriff's deed. There was a temporary order entered by Judge Hall, which we have argued could be interpreted that the rent claims remained in my client. That is in our brief. Judge Hall's order is argued as not sending, if there was a dispute as to a tenant, my client retained the rights to litigate the rents as to that. This Judge Hall order is before the court. It is not what counsel said it was, that that's it, all rents, all rents. But we've got it. I mean, so, yeah, we have that order. Last but not least, all the focus today has been on contract standing under these contract standing cases. I respectfully submit that the contract standing cannot be dispositive of the fraud standing. There was a fraud claim brought in this case on which summary judgment was entered. The fraud claim was pleaded in the fourth amended complaint. There was never a standing argument made as to the fraud claim. There was an argument made that you can't sue for fraud when you have a breach of contract remedy. That's what defense counsel argued to Judge Burke. There's a breach of contract remedy here. Ergo, you can't sue for fraud. Well, if this court, assuming arguendo, says there is no contract remedy, then the fraud claim is not affected by whatever ruling there is made on the standing under the contract claim. We submit that there were questions of material fact on the fraud claim, which shows that the manner in which this potash entity dealt with my clients was fraudulent, that their board discussed canceling the lease, and then two weeks later they send a notice demanding 57,000 square feet after the board voted to lease all the space up on the Edens in the North Brook. We argue that the way potash went about this was deceptive and fraudulent and that it's not controlled by whether American National Bank owned, because the fraud claim wasn't even pleaded initially in this case. It wasn't pleaded until the Fourth Amendment complaint when Harms Road is a plaintiff. So respectfully, the fraud claim stands on its own and isn't dependent legally or factually on whatever ruling this court makes on the standing claim. Thank you, Your Honor. The court will take the case under advisement.